UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| DAONDA PAYNE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:17-CV-76 |
| | ) |
| CVS PHARMACY, INC., CVS | ) |
| FOUNDATION, INC. f/k/a CVS | ) |
| CORPORATION, and CVS RX SERVICES, | ) |
| INC., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

This matter is before the Court on Defendants' Motion to Dismiss the Amended Complaint and Compel Arbitration [doc. 13], Defendants' Brief [doc. 14], Plaintiff's Response and Affidavits in Opposition to the Motion [docs. 19, 19-1, 19-2, & 19-3], Defendants' Reply [doc. 24], Defendants' Motion to Strike Plaintiff's Affidavits [doc. 22], Defendants' Brief [doc. 23], Plaintiff's Response [doc. 26], and Defendants' Reply [doc. 27]. For the reasons herein, the Court will deny the motions as moot and dismiss this action, without prejudice, for lack of subject matter jurisdiction.

I.  **BACKGROUND**

A pharmacist supervisor formerly in Defendants' employment, Plaintiff DaOnda Payne pleads that Defendants adopted a "Metrics" system that was illegal and forced its pharmacists to choose between meeting the system's directives and violating Tennessee

law and professional regulations governing the industry. [Am. Compl., doc. 2, ¶¶ 9, 11, 12–13, 15]. Specifically, she claims that the Metrics system's directives required her to prepare "false prescriptions," which led to "medication errors" and "endager[ed] patients." [*Id.* ¶ 18]. According to Ms. Payne, the Metrics system was a "cost-cutting measure" that Defendants designed to place "unobtainable goals" on its older pharmacists so they could terminate and replace them with recent pharmacy-school graduates "willing to work for less money." [*Id.* ¶¶ 12, 14, 16].

Ms. Payne alleges that, several years later, she notified her superiors of "illegal practices," "public policy violations," and "inappropriate behavior" occurring in the pharmacy. [*Id.* ¶¶ 20, 25]. She claims that Defendants began treating her "harshly in retaliation" and ultimately "constructively" discharged her. [*Id.* ¶¶ 25, 27]. She maintains that Defendants also terminated several other "higher paid" and "experience[d]" pharmacists "within a short period of time." [*Id.* ¶ 25]. As a result, she brings this action, pleading claims for wrongful discharge in violation of public policy. [*Id.* ¶¶ 28–37]. In response, Defendants move the Court—under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3–4—to compel arbitration of her claims, citing their Arbitration of Workplace Legal Disputes Policy [doc. 14-1]. [Defs.' Br., doc. 14, at 12].

## II. THE FEDERAL ARBITRATION ACT

The FAA states that an arbitration provision in "a contract evidencing a transaction involving commerce" is "valid, irrevocable, and enforceable" except on "such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Under the FAA,

2

parties may initiate suit "in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration." *Id.* § 3. In simple terms, the FAA permits courts to compel parties to resolve their legal dispute in an arbitral tribunal, rather than in the judiciary, when they have agreed to a valid, written arbitration provision. *Burden v. Check into Cash of Ky., LLC*, 267 F.3d 483, 487 (6th Cir. 2001).

But importantly, neither the FAA's provisions nor a motion to compel arbitration under the FAA confers subject matter jurisdiction on federal courts, which "are courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).

> The [FAA] is something of an anomaly in the field of federal-court jurisdiction. It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 . . . or otherwise.

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983) (citing 28 U.S.C. § 1331). The federal courts must therefore have an independent jurisdictional basis to address a motion to compel arbitration under the FAA. In other words, they must have jurisdiction over the underlying lawsuit—the "suit arising out of the controversy between the parties." 9 U.S.C. § 4; *see Moses H. Cone*, 460 U.S. at 25 n.32 (stating that the FAA permits federal courts to hear motions under the FAA "only when [they] would have jurisdiction over a suit on the underlying dispute" and "hence, there must be diversity of citizenship or some other independent basis for federal jurisdiction" (citation omitted)).

So this Court, as is true in all cases that come before it, must insist on allegations that establish a basis for subject matter jurisdiction in this case. *See Vaughn v. Holiday Inn*

3

*Cleveland Coliseum*, 56 F. App'x 249, 250 (6th Cir. 2003) ("A plaintiff in federal court has the burden of pleading sufficient facts to support the existence of the court's jurisdiction." (citation omitted)); *Boone v. Comcast/Verizon*, No. 3:10-CV-144, 2011 WL 1258050, at *3 (E.D. Tenn. Mar. 31, 2011). ("In the absence of proper allegations establishing [federal jurisdiction], the court must presume that subject matter jurisdiction does *not* exist."); *May v. Wal-Mart Stores, Inc.*, 751 F. Supp. 2d 946, 950 (E.D. Ky. 2010) ("Just as a criminal defendant is presumed innocent until the government proves him guilty, a case is presumed to fall outside a federal court's jurisdiction until a litigant proves otherwise.").

### III. FEDERAL QUESTION JURISDICTION

Ms. Payne pleads that the Court's basis for subject matter jurisdiction over this case is federal question jurisdiction under 28 U.S.C. § 1331. [Am. Compl. ¶ 1]. Section 1331 provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." In determining whether "arising under" jurisdiction exists under this statute, federal courts adhere to the venerable well-pleaded complaint rule. *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908). This rule, in broad strokes, means that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citation omitted). A plaintiff satisfies the rule only when the complaint establishes that (1) "federal law creates the cause of action" or that (2) "the plaintiff's right to relief necessarily depends on resolution of a

4

substantial question of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 27–28 (1983).

But this language is somewhat wooly, and the application of the rule is hardly an exact science. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 317 (2005) ("[We have] disclaimed the adoption of any bright-line rule . . . in exploring the outer reaches of § 1331[.]" (internal quotation mark and quotation omitted)); *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 759 (6th Cir. 2000) ("The exact contours of the federal courts' jurisdiction under 28 U.S.C. § 1331 are somewhat imprecise."); *Willy v. Coastal Corp.*, 855 F.2d 1160, 1165 (5th Cir. 1988) ("Defining when a claim arises under federal law has drawn much attention but no simple solutions." (citations omitted)). The rule's application presents particularly difficult challenges when a plaintiff embeds state-law claims with federal matters or when a plaintiff raises alternate theories of recovery under state law and federal law. *See Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 807–17 (1986); *see also Gunn v. Minton*, 568 U.S. 251, 256–65 (2013); *Long*, 201 F.3d at 759–61; *cf. Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 807–13 (1988).

Ms. Payne's claims present the second of these challenges—alternate theories of recovery under state law and federal law. In her first claim, which she introduces with the heading "Wrongful Discharge in Violation of Public Policy," she pleads that Defendants have violated "Tennessee and United States laws against retaliatory dismissal," which are the apparent bases for the alleged public-policy violation. [Am. Compl. ¶ 30]. Other than the reference to "United States laws," this claim contains no other reference to any federal

5

law or federal issue. Next, in her second and final claim, which she introduces with the heading "Wrongful Discharge in Violation of Public Policy under Tenn Code Ann. § 50-1-304 (2015)," she dually pleads that Defendants have committed a violation of public policy under both "Tenn. Code. Ann. § 50-1-304 (2015) and United States laws against retaliatory dismissal." [*Id.* ¶ 35]. Other than the alleged violation of "United States laws," this claim also contains no other reference to any federal law or federal issue.

By pleading public-policy violations that have conterminous foundations in state law and federal law—under the same headings and allegations, no less—Ms. Payne fails to establish that (1) federal law itself creates her claim or (2) no right to relief is available to her without resolution of a federal issue. *See Long*, 201 F.3d at 761 (determining that because the plaintiff's complaint "put forth alternate bases in state and federal law for the public policy in contravention," the wrongful-discharge claim did not create jurisdiction under § 1331);[1] *Willy*, 855 F.2d at 1170 (observing that the plaintiff had premised his wrongful-discharge claim on "alternate theories," one involving federal law and one involving state law, and concluding that federal question jurisdiction was nonexistent because "[n]othing" indicated that the state theory was "not sufficient of itself and without the [federal] theory" (footnoted omitted)); *cf. Christianson*, 486 U.S. at 810 (concluding that "a claim supported by alternative theories in the complaint" will not result in federal patent jurisdiction unless patent law is "essential to each of those theories" and "necessary

---

[1] In *Long*, the plaintiff—similarly to Ms. Payne in this case—alleged that the "public polices of [Kentucky] and of the United States . . . have been violated by the Defendant's wrongful termination." *Long*, 201 F.3d at 756.

to the overall success of [the] claim"); *see also Grable & Sons*, 545 U.S. at 314 (providing that a state-law claim will trigger federal question jurisdiction only when a plaintiff pairs it with a federal matter on which overall relief is contingent). Simply, Ms. Payne props her public-policy claims on state and federal theories of recovery. Because each of these theories is a hinge on which her claims can turn toward relief, her right to relief does not necessarily depend on resolution of a federal question. Her claims therefore cannot form the basis for jurisdiction under § 1331.[2]

As the parties likely realize, the Court has taken the initiative to broach subject matter jurisdiction in this case; the parties do not raise it in their briefs. The Court has license not only to sua sponte address subject matter jurisdiction anytime it is doubtful of its existence but also to sua sponte dismiss a case for lack of subject matter jurisdiction. *See Ky. Press Ass'n v. Kentucky*, 454 F.3d 505, 508–09 (6th Cir. 2006) (acknowledging that courts have "an independent duty 'to inquire *sua sponte* whenever a doubt arises as to the existence of federal jurisdiction'" (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 278 (1977))); *In re Lewis*, 398 F.3d 735, 739 (6th Cir. 2005) (stating that "subject matter jurisdiction may be raised at any time, by any party, or even *sua sponte* by the court itself" (citation omitted)); *see also Patsy v. Bd. of Regents*, 457 U.S. 496, 525 n.10 (1982) (Powell, J., dissenting) (declaring that "it would . . . be an unconstitutional invasion of the powers reserved to the states if the federal courts were to entertain cases not within their jurisdiction" (quotation omitted)); *Apple v. Glenn*, 183 F.3d 477, 479 (6th

---

[2] The Court offers no opinion as to whether Ms. Payne's state-law claims would be proper pendent claims under 28 U.S.C. § 1367, which Ms. Payne has not pleaded as a jurisdictional basis.

7

Cir. 1999) ("[A] district court may, at any time, *sua sponte* dismiss a complaint for lack of subject-matter jurisdiction[.]" (citations omitted)). For lack of subject matter jurisdiction, the Court will therefore sua sponte dismiss Ms. Payne's Amended Complaint, but it will permit her to file a second amended complaint to rectify the jurisdictional deficiencies in her allegations if she chooses to. *See Apple*, 183 F.3d at 479 ("Generally, a district court may not *sua sponte* dismiss a complaint where the filing fee has been paid unless [it] gives the plaintiff the opportunity to amend the complaint." (citations omitted)).

### IV. CONCLUSION

Ms. Payne fails to meet her burden of pleading sufficient facts to support the existence of the Court's subject matter jurisdiction. The Court must therefore presume that it is without jurisdiction over this case. The Court orders as follows:

1. This case is **DISMISSED without prejudice** due to lack of subject matter jurisdiction.
2. Within twenty-one days, Ms. Payne may file a second amended complaint that provides the Court with a basis to exercise subject matter jurisdiction over this case.
3. If the Court does not receive a second amended complaint within this timeframe, it will enter a final order of dismissal and close this case.
4. Defendants' Motion to Dismiss the Amended Complaint and Compel Arbitration [doc. 13] is **DENIED as moot**.

5. Defendants' Motion to Strike Plaintiff's Affidavits [doc. 22] is **DENIED as moot**.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge